UNITED STATES of America

v.

Paul Craig SCHAECHTER.

Civ. No. H–94–3536.
Crim. Nos. H–93–0188, H–93–0301.

United States District Court,
D. Maryland,
Northern Division.

June 13, 1995.

1388 (3d Cir.1982). Although we are not bound by it, we find the reasoning of the Trial Division persuasive and adopt it as our own. *See Nibbs v. Roberts*, VI BBS 91CI29A.DX2 (D.V.I.APP. Feb. 8, 1995) (explaining the authority of the Appellate Division regarding issues of purely local law); *In the Matter of Barrett*, 91CI159A.DX2 (D.V.I.APP. Jan. 31, 1995).

10. The clarification in essence ended any mystery of whether the initial dismissal was based on Williams' failure to prosecute or resulted from Newman's contention that a minor could not be held liable for his acts.

11. *See Link v. Wabash Railroad Co.*, 370 U.S. 626, 630–32, 82 S.Ct. 1386, 1388–90, 8 L.Ed.2d 734 (1962). The preclusive effect of a Rule 41(b) dismissal, however, is limited to the precise issues resolved by the dismissal. *See Allegheny International Inc. v. Allegheny Ludlum Steel Corp.*, 40 F.3d 1416 (3d Cir.1994) (LEXIS, Gen-

fed library, 3cir file) (holding that dismissal of a previous suit with prejudice is not *res judicata* unless the suits involve both the same parties **and** the same causes of action).

12. "It is commonly said that preclusion can rest only on a judgment that is valid, final and on the merits." 18 CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4435, at 329 (1981).

13. Without in any way passing on the merits, we note Restatement (Second) of Torts, section 283A (holding children responsible under tort law to the standard of a reasonable person of like age, intelligence, and experience under similar circumstances); 20 V.I.C. § 374 (holding parents or guardians financially responsible for torts caused by their wards); and 5 V.I.C. § 73 (providing a procedural framework pursuant to FED.R.CIV.P. 17(c) for a minor's legal defense).

Lynne A. Battaglia, U.S. Atty., D. Md., John V. Geise and Christine Manuelian, Asst. U.S. Attys., Baltimore, MD, for Government.

Brian W. Shaughnessy, Shaughnessy, Borowski & Gagner, Washington, DC, for defendant.

*MEMORANDUM AND ORDER*

MALETZ, District Judge, Sitting by Designation.

I. *Introduction*

On July 23, 1993, the defendant, Paul Craig Schaechter, pled guilty to a superseding information charging him with distribution of LSD in violation of 21 U.S.C. § 841(a)(1). He also pled guilty, pursuant to Rule 20 of the Federal Rules of Criminal Procedure, to a criminal information that had been filed in the Eastern District of Kentucky charging him with unlawful use of a communication facility in violation of 21 U.S.C. § 843(b). The defendant was thereafter sentenced by the court to a prison term of 87 months as to the LSD charge in this district and a concurrent term of 48 months on the Kentucky offense.[1]

The defendant now moves, under 28 U.S.C. § 2255, to have his sentences set aside. He asserts that the court denied him due process of law by failing to take his diminished mental capacity into account at the time of sentencing. The defendant also claims that his counsel's performance was constitutionally deficient because counsel negotiated a plea agreement with the government which effectively precluded the court's consideration of the diminished capacity issue. On May 31, 1995, the court held an evidentiary hearing on the defendant's motion. Having considered the evidence at that hearing, the parties' written submissions, and the entire record in this case, the court is prepared to rule. For the reasons explained below, the defendant's motion will be denied.

II. *Background*

Prior to the superseding information which he pled guilty to, the defendant was initially charged by indictment in this district with the distribution of more than 10 grams of LSD. The distribution of 10 or more grams of LSD, if proven, triggers a mandatory minimum sentence of 10 years. *See* 21 U.S.C. § 841(b)(1)(A)(v).

In connection with this charge, the defendant retained three attorneys: David Nick and Tony Serra, both of California, and Fred Warren Bennett of Maryland. On May 27, 1993, the three attorneys filed, on defendant's behalf, various pretrial motions, including a motion to suppress evidence and a motion to dismiss the indictment on the grounds of improper venue. On July 2, 1993, all of the motions were denied by Judge Alexander Harvey, II, of this court, to whom this case was originally assigned. On the same day, the defense was advised by government counsel that the prosecution would seek to introduce at trial evidence of other LSD transactions engaged in by the defendant, both preceding and subsequent to the transaction charged in the indictment. The defendant's attorneys were in agreement that such evidence was properly admissible pursuant to Rule 404(b) of the Federal Rules of Criminal Procedure [2] and that it would be devastating to the entrapment defense which they had planned on presenting. Lacking any other viable defense, the defendant was advised by each of his attorneys that a plea agreement with the government should be negotiated. The defendant reluctantly agreed with this advice, and plea negotiations were commenced.[3]

After several days of negotiations, Mr. Bennett persuaded the prosecution to forego the 10–year mandatory minimum sentence that was called for by the indictment. This was accomplished by the government charging the defendant, in the superseding information, with a different and smaller distribu-

---

1. Consistent with the parties' plea agreement, the court imposed these judgments and sentences in two separate judgment and commitment orders.

2. Rule 404(b) provides that "evidence of other crimes, wrongs or acts ... may ... be admissible ... as proof of motive, ... intent, preparation, plan, knowledge...."

3. Attorneys Nick and Serra testified at the evidentiary hearing that at this juncture, they essentially ceased their representation of the defen-

dant, although they did not bother to withdraw their notice of appearance with the court. As Nick and Serra repeatedly emphasized, they are "trial attorneys" who do not "bargain" with the government. Plea negotiations with the government were conducted by Mr. Bennett. Bennett, however, testified that he kept Nick and Serra informed as to the progress of his negotiations and that at no time was any disagreement voiced by them.

tion of LSD. Mr. Bennett also obtained the government's agreement to postpone sentencing for several months so that the defendant could benefit from an amendment to the United States Sentencing Guidelines which took effect on November 1, 1993.[4] With that amendment factored in, it was agreed by Mr. Bennett and government counsel that the defendant's sentencing range under the United States Sentencing Guidelines was 97 to 121 months, which pursuant to Rule 11(e)(1)(B) of the Federal Rules of Criminal Procedure would not be binding upon the court.[5] Mr. Bennett also obtained the government's agreement for a concurrent sentence of 48 months on the Kentucky charge which was then pending against the defendant.

A draft plea agreement incorporating all of the above was prepared by government counsel, Judith Bollinger, and faxed to Mr. Bennett.[6] Upon reviewing the agreement in written form, Mr. Bennett became concerned that the court might elect to sentence the defendant to high end of the contemplated sentencing range, or perhaps even higher. Because of this concern, he requested that the government stipulate to a specific sentence of 97 months pursuant to Rule 11(e)(1)(C) of the Federal Rules of Criminal

Procedure.[7] The government complied with this request and a revised (C) agreement was provided by the government to Mr. Bennett and the defendant.

Prior to signing this (C) agreement, the defendant traveled to California to consult with Messrs. Nick and Serra. The defendant was again advised by these attorneys that he had only a five percent chance of prevailing at trial and that he should take the plea bargain which Mr. Bennett had negotiated.

On July 19, 1993, the defendant signed the plea agreement and an accompanying stipulation of facts listing various LSD transactions that he had participated in. Four days later the defendant appeared before the court and entered his plea of guilty. At that time, the court engaged the defendant in a lengthy colloquy and determined that the defendant was competent to plead guilty, and that his plea was knowingly and voluntarily made.[8]

Despite the parties' stipulation to a sentence of 97 months, Mr. Bennett contended, via a September 23, 1993, letter to the defendant's probation officer, that the defendant could properly be sentenced to a prison term of less than 97 months because of the defen-

---

4. This amendment significantly changed the methodology for calculating the weight of LSD. Weight is a critical issue since it determines an LSD offender's base offense level under the Guidelines. Prior to the amendment, courts were to include the weight of the carrier medium on which LSD is generally provided. See U.S.S.G. § 2D1.1(c) (Nov. 1992). The carrier medium often will substantially outweigh the LSD itself. With the passage of the amendment, courts are no longer to consider the weight of the carrier medium, but are instead to treat each dose of LSD as being equal to .04 grams. See U.S.S.G. § 2D1.1(c) (Nov. 1993).

5. Rule 11(e)(1)(B) provides in pertinent part that the parties may reach a plea agreement by which "the attorney for the government will make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such a recommendation or request shall not be binding upon the court...."

6. Neither party has retained a copy of this draft agreement. Mr. Bennett, while not positive, believes that it contained standard boilerplate lan-

guage precluding either party from seeking a departure from the applicable guideline sentencing range. Assistant United States Attorney (AUSA) Jack Geise, Ms. Bollinger's supervisor in this case, testified that such language is part of the government's standard form plea agreement, and as such, is regularly included unless its removal is specifically negotiated by the parties. While AUSA Geise did not have a specific recollection as to whether the draft agreement contained this provision, he believed that it did since the issue had not been raised during negotiations. As will be discussed further below, AUSA Geise also testified that he would not have approved a plea agreement in this case which did not contain this provision.

7. Rule 11(e)(1)(C) provides that the parties may "agree that a specific sentence is the appropriate disposition of the case." As will be discussed further below, a sentencing court may either reject or accept such an agreement, but may not modify it.

8. The defendant does not claim in his instant motion that he was incompetent or that his plea was involuntary.

dant's diminished mental capacity.[9] In support of this contention, defense counsel submitted reports from several psychiatrists. The government, by letters dated September 27 and October 4, 1993, objected to Mr. Bennett's position, arguing that a downward departure for diminished capacity would constitute a rejection of the plea agreement and would thereby free the government to proceed against the defendant under the original indictment.[10]

The case proceeded to sentencing on November 5, 1993, at which time the court ruled that under Federal Rule of Criminal Procedure 11(e)(1)(C), it could not both accept the plea agreement and provide a sentence other than that which the parties had stipulated to. The court further advised the parties that it had decided to reject the plea agreement, since the defendant had raised a genuine issue concerning his mental capacity which the agreement effectively precluded the court from considering. Having rejected the agreement, the court provided the defendant with an opportunity to withdraw his guilty plea. The court then granted the parties' request for a week's continuance so that they could further consider the matter.

During this interim period, Mr. Bennett, for the first time, attempted to convince the government to enter into an agreement by which the court could consider the issue of the defendant's mental capacity. The government adamantly refused. The government eventually agreed, however, to stipulate to an 87–month sentence, 10 months less than previously agreed upon.[11] In return, the defendant agreed to withdraw his request for a downward departure for his diminished mental capacity.

The defendant's sentencing was continued on November 16, 1993, at which time the

defendant personally "urge[d] the court to take [the parties' revised] agreement, to get this thing over with." The court accepted the agreement, and consistent with that agreement, the defendant was sentenced to a prison term of 87 months.

## III. *Analysis*

### A. *The Due Process Claim*

■ The defendant claims that the court denied him due process of law by "erroneously rul[ing] that it did not have the authority to accept the 11(e)(1)(C) plea agreement and then depart downward for diminished capacity." Defendant's Motion at 3. In so arguing, however, the defendant ignores the authorities upon which the court relied in reaching its decision. As the court explained at the time of the defendant's initial sentencing proceeding, the two Federal Circuits that have addressed this issue have both concluded that a court may not modify a (C) plea agreement and then impose a sentence other than the agreement specifically provides for. *See United States v. Cunavelis,* 969 F.2d 1419, 1422 (2d Cir.1992) ("The district court may accept or reject a[ ] ... (C) plea, but it may not modify it."); *United States v. Semler,* 883 F.2d 832, 833 (9th Cir.1989) ("Rule 11 ... prohibits a district court from sentencing a defendant to a sentence less severe than that provided for in the plea agreement accepted by the court.").[12] As recognized by both the Second Circuit in *Cunavelis* and the Ninth Circuit in *Semler,* Rule 11(e)(2) provides that a sentencing court may "accept or reject" a (C) agreement without providing any authority for modification. Moreover, Rule 11(e)(3) specifically provides that if the court accepts a (C) agreement, the court shall "embody in the judgment and sentence

---

**9.** U.S.S.G. § 5K2.13 provides that "if the defendant committed a non-violent offense while suffering from significantly reduced mental capacity not resulting from voluntary use of drugs or other intoxicants, a lower sentence may be warranted to reflect the extent to which reduced mental capacity contributed to the commission of the offense...."

**10.** Prior to his September 23d letter, Mr. Bennett had not raised the issue of the defendant's mental capacity with the government. Mr. Bennett, however, had been advised by the defendant's

parents, prior to the commencement of plea negotiations, that the defendant had a long history of serious emotional and psychological problems.

**11.** This was accomplished by providing the defendant with an additional one level reduction for "acceptance of responsibility." *See* U.S.S.G. § 3E1.1(b).

**12.** *See also United States v. Mukai,* 26 F.3d 953, 955 (9th Cir.1994).

the disposition provided for in the agreement."[13]

■ The defendant contends, without support, that Rule 11 has been superseded by the United States Sentencing Guidelines which, according to the defendant, provides a sentencing court with the authority to accept and then modify an 11(e)(1)(C) plea agreement. To the contrary, however, the Guidelines specifically provide that "(t)he rules set forth in Fed.R.Crim.P. 11(e) govern the acceptance or rejection of [plea] agreements." U.S.S.G. Ch. 1, PT. A, intro. comment 4(c) (November 1994). *See also United States v. Cunavelis*, 969 F.2d at 1422.

The defendant mistakenly relies upon U.S.S.G. § 6B1.4(d) which provides that "the court is not bound by the [parties'] stipulation, but may with the aid of the presentence report, determine the facts relevant to sentencing." As § 6B1.4 and the accompanying commentary make clear, this provision applies not to an 11(e)(1)(C) stipulated sentence, but to a "written stipulation of facts" which may accompany a plea agreement.

■ The defendant also erroneously relies upon U.S.S.G. § 6B1.1(c). That provision provides that the court shall defer its decision to "accept or reject any plea agreement pursuant to Rules 11(e)(1)(A) and 11(e)(1)(C) until there has been an opportunity to consider the presentence report...." The defendant contends that since the court is required to consider the presentence report, it somehow follows that the court may accept an 11(e)(1)(C) agreement and then modify it through the use of departures. The court's consideration of the presentence report, however, is not for the purpose of modifying the parties' (C) agreement, but so as to determine whether or not the agreement should be accepted or rejected. The court has no authority under either Rule 11 or the Sentencing Guidelines to abrogate the parties' (C) agreement.

The defendant also claims a violation of his rights to due process because the court denied him the "full benefit of his plea agreement," and because the court sentenced him on the basis of inaccurate information. *See* Defendant's Motion at 21. Given the fact that the court sentenced the defendant to the exact prison term which he stipulated to in his plea agreement, the defendant's assertion in this regard is difficult to understand. The defendant also fails to specify what inaccurate information he is referring to. Accordingly, these claims by the defendant are plainly without merit.[14]

## B. *Ineffective Assistance*

The defendant claims that Mr. Bennett's performance was constitutionally deficient because he failed to raise the issue of diminished capacity until after he had already negotiated a (C) agreement with the government, which effectively precluded the court's consideration of the issue. In order to estab-

13. As the Second and Ninth Circuits also recognized in their respective opinions, the legislative history of Rule 11(e)(3) makes it perfectly clear that Congress intended to preclude a district court from imposing a lesser sentence than that which has been agreed to by the parties. *Cunavelis*, 969 F.2d at 1422–23; *Semler*, 883 F.2d at 833–34. The version of Rule 11(e)(3) proposed by the Supreme Court in 1974 stated that "the court shall inform the defendant that it will embody in the ... sentence the disposition provided for in the plea agreement or another disposition more favorable to the defendant than that provided for in the plea agreement." The House Judiciary Committee then deleted the language "or another disposition more favorable to the defendant than that provided for in the plea agreement," and the House affirmed the Committee's action by rejecting on the Floor an amendment offered to restore the Supreme Court's version of the Rule. The Senate accepted the House's version of the Rule. *See* 121 Cong.Rec. 23322 (July 17, 1975). By deleting the Supreme Court's "more favorable to the defendant" language, Congress evidenced its intent to require a district court to sentence a defendant in accordance with the plea agreement.

14. The defendant also claims that he was denied due process because the court "improperly ... issue[d] two Judgment and Commitment Orders to reflect his separate convictions on the Maryland and the Kentucky charges." Defendant's Motion at 23. The defendant, however, fails to explain the impropriety of separate Judgment and Commitment Orders for separate convictions. Moreover, the defendant specifically stipulated to this in his plea agreement. Finally, this claim may not be properly raised via a § 2255 motion. *See Stone v. Powell*, 428 U.S. 465, 477 n. 10, 96 S.Ct. 3037, 3044 n. 10, 49 L.Ed.2d 1067 (1976); *United States v. Emanuel*, 869 F.2d 795 (4th Cir.1989).

lish an ineffective assistance of counsel claim, the defendant must satisfy the two-prong standard of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the defendant must show that "counsel's performance fell below an objective standard of reasonableness." *Id.* at 688, 104 S.Ct. at 2064. Second, the defendant must show that he has been prejudiced by his attorney's conduct; that there is a "reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. The first inquiry—whether counsel's performance was deficient—may be bypassed if defendant fails to demonstrate sufficient prejudice. *Id.* at 697, 104 S.Ct. at 2069–70.

■ In order to satisfy the prejudice requirement of *Strickland,* a defendant who has pleaded guilty "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhardt,* 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985); *see also Fields v. Attorney General of the State of Maryland,* 956 F.2d 1290, 1297 (4th Cir.), *cert denied,* —— U.S. ——, 113 S.Ct. 243, 121 L.Ed.2d 176 (1992). The defendant here does not assert that he would have gone to trial but for counsel's alleged error.[15] Instead, the defendant merely asserts that his counsel should have obtained a better bargain. This is "manifestly" insufficient as a matter of law. *Fields,* 956 F.2d at 1297.[16]

■ Even if the prejudice component of *Strickland* could be satisfied by showing that a better plea agreement was obtainable, the defendant's claim would still fail. The uncontroverted evidence in this case is that the defendant received the most favorable agreement the government was willing to provide. AUSA John V. Geise, who supervised the plea negotiations in this case, testified that had defense counsel initially proposed an agreement which would have allowed for the court's consideration of the diminished capacity issue, he would have unquestionably rejected it. AUSA Geise's testimony in this regard is borne out by the fact that he ultimately did refuse to enter into an agreement of this nature when it was proposed by defense counsel following the court's rejection of the parties' original agreement.[17] As AUSA Geise explained at the evidentiary hearing, he viewed the government's case against the defendant as being extremely strong. He also views LSD as a particularly "pernicious" narcotic and he believed the amount of LSD involved in this case to be substantial. Accordingly, AUSA Geise saw no reason why the government should enter into a plea agreement under which a sentence of less than 87 months was a possibility. Apparently concerned that the court might take a different view of a 22–year old non-violent drug offender with no significant criminal past[18] and a history of emotional and psychological problems, the prosecution would not, under any circumstances, open

---

15. Such a claim would be patently without merit in light of the fact that the defendant declined the opportunity provided by the court to withdraw his plea, and proceed to trial once counsel's alleged mistake came to light. Instead the defendant elected to enter into a revised plea agreement. Given the fact that the government's case against him was, by all accounts, extremely strong, and that he was facing mandatory minimum sentences of 10 years, both here and in Kentucky, the defendant's choice was a prudent one.

16. In this regard, it must be recognized that a defendant has no constitutional right to a plea bargain. *See Weatherford v. Bursey,* 429 U.S. 545, 561, 97 S.Ct. 837, 846–47, 51 L.Ed.2d 30 (1977). Accordingly, the defendant here had no right to a plea bargain under which the issue of his mental capacity could be considered by the court.

17. AUSA Geise's firm resolve with respect to the diminished capacity issue is further demonstrated by the fact that he refused defense counsel's proposal despite the court's specific finding that the defendant's mental capacity was a genuine issue worthy of further consideration. The government's inflexibility on this point is also evidenced by the government's rejection of Mr. Bennett's proposal without having bothered to obtain and review the psychiatric reports.

18. The defendant's only prior conviction was for simple possession of marijuana in the D.C. Superior Court.

the door to the court's consideration of the defendant's mental capacity.[19]

The defendant also contends that Mr. Bennett pressured him into signing the stipulated statement of facts despite his insistence that two of the LSD transactions listed therein had not occurred.[20] Again, the defendant's claim fails for lack of prejudice. The defendant does not contend that but for this alleged error, he would have gone to trial. Moreover, as the defense conceded at the evidentiary hearing, inclusion of these transactions did not impact upon the defendant's sentence.

Accordingly, for all of the foregoing reasons, the defendant's motion, pursuant to 28 U.S.C. § 2255, is hereby denied.

---

**19.** The defendant's complaint here should not be with his attorney, who tenaciously negotiated the most favorable agreement that he could obtain, but with Congress. It is Congress that has provided the prosecution with the unfettered discretion, in cases like the one at bar, to preclude the court from even considering such substantial issues as the defendant's mental capacity. This circumstance results from the fact that the court is prohibited from imposing a sentence below the applicable statutory minimum for any reason other than a defendant's cooperation with the prosecution. The prosecution, on the other hand, has the discretion to charge and recharge a defendant in such a way as to evade a mandatory sentence. If the prosecution elects to grant a defendant this benefit, it has the further discretion to limit the issues which the defendant may present to the sentencing court, regardless of how meritorious those issues might be. This is precisely what occurred in the instant case.

**20.** Mr. Bennett denied this allegation at the evidentiary hearing. While he recalled that the defendant initially disputed two of the transactions, he testified that the defendant, without any pressure on his part, signed the statement of facts after consulting with his California attorneys. Mr. Bennett stated that in response to the defendant's initial protestations, he inquired as to whether the defendant might simply be confusing the dates of the various transactions. Mr. Bennett also testified that he informed the defendant that if the disputed transactions were removed, the government would insist on including other transactions which the defendant did not dispute.