UNITED STATES of America,
Appellee,

v.

Nolan WILLIAMS, also known as Rahmel, John Johnson, also known as Gotti, Destry Kearse, also known as Cat, Dupree Cumberbatch, also known as Do-Real, Rafael Arroyo, also known as B.T., also known as Luis Garcia, also known as Ponch, Jermaine Straight, also known as Shrimp, Kevin Nix, Defendants,

Michael King, also known as Science, Randy Hutchinson, Timothy Rucker, also known as Tuquan, Defendants-Appellants.

Docket Nos. 99-1277(L), 99-1395(CON), 99-1428(CON).

United States Court of Appeals, Second Circuit.

Argued June 5, 2000.

Decided Aug. 09, 2001.

Roger J. Bernstein, New York, NY, for Defendant-Appellant Hutchinson.

Kelly A. Moore, Assistant United States Attorney (Loretta E. Lynch, United States Attorney, Eastern District of New York, and David C. James, Assistant United

States Attorney, on the brief), Brooklyn, NY, for Appellee.

Before: WALKER, Chief Judge, POOLER, Circuit Judge, and HADEN, Chief District Judge.*

JOHN M. WALKER, JR., Chief Judge:

Defendant Randy Hutchinson appeals from a June 21, 1999 judgment of the United States District Court for the Eastern District of New York (I. Leo Glasser, *Senior District Judge*) convicting him after a guilty plea of conspiracy to possess cocaine with intent to distribute and sentencing him to twenty years' imprisonment.[1] On appeal, Hutchinson argues that section 5G1.3(b) of the United States Sentencing Guidelines mandates that his sentence should have been imposed to run concurrently with his existing undischarged state sentence, with credit for time served on that state sentence. We disagree and therefore affirm Hutchinson's sentence.

## BACKGROUND

This prosecution arose from a joint investigation by the Federal Bureau of Investigation and New York Police Department into a large and violent drug distribution gang, the CIC/Cavemen, beginning in mid-1997. In the early 1990s, a street gang known as "Criminals in Charge" or "CIC" operated from the Cypress Hills Housing Projects in Brooklyn, New York. Headed by Michael King, the CIC enlisted numerous residents of the Cypress Hills Projects to sell drugs. The "CIC/Cavemen" gang came into being when the CIC combined with Timothy Rucker's Cavemen gang,

from the neighboring Louis H. Pink Housing Projects. The combined gangs shared drugs, guns, workers, and a desire to eliminate rival drug dealers. Hutchinson ran a drug distribution operation in Utica, New York that was supplied by the CIC/Cavemen organization in Brooklyn.

In 1995, Hutchinson was arrested and charged in New York state court with attempted possession of 30 grams of cocaine base. He pled guilty and was sentenced in March 1997 to one to four years in state prison. While in prison, Hutchinson and nine other CIC/Cavemen associates were named in the twenty-two count federal indictment at issue here. It charged Hutchinson's involvement in (1) a drug conspiracy, (2) a continuing criminal enterprise, (3) a racketeering conspiracy, (4) a murder conspiracy, and (5) the use or carrying of a firearm during drug trafficking activity. With roughly eleven months of his state sentence behind him, Hutchinson was transferred to federal custody in January 1998.

Following jury selection, some of the defendants entered global, oral plea agreements with the government. All of the pleas involved sentence bargains under Fed. R. Crim. P. 11(e)(1)(C) (1999) and provided the pleading defendants with substantial benefits. In Hutchinson's case, in return for avoiding a lengthy and costly trial, the government permitted Hutchinson to plead guilty solely to the drug conspiracy charge. Had Hutchinson gone to trial and been convicted of all of the charged offenses, a life sentence would have been mandatory.[2] Under the plea

---

* The Honorable Charles H. Haden II, Chief Judge of the United States District Court for the Southern District of West Virginia, sitting by designation.

1. Appeals filed by two of Hutchinson's co-defendants, Michael King and Timothy Ruck-

er, are dealt with in a separate summary order filed simultaneously with this opinion.

2. The presentence report calculated an offense level of 47 with a criminal history cate-

agreement's stipulated sentence, however, Hutchinson faced a certain and significant, but much lighter, twenty-year prison term. The plea agreement made no mention of whether the stipulated federal sentence of twenty years would be served consecutive to, or concurrent with, the sentence Hutchinson was then serving in state prison. In the plea agreement, Hutchinson waived his right to appeal the length of his sentence.

There was some dispute in the district court about how the Sentencing Guidelines would apply to Hutchinson's sentence. At Hutchinson's January 28, 1999 plea allocution, the district court stated that

> I would normally explain what the guidelines are all about and what the estimated guidelines in this case might be. That is superfluous because each of you has entered in an agreement with the government that the government has accepted the plea agreement pursuant to a particular section of the Criminal Procedure law, [whereby the] sentence ... is agreed upon.

After the district court had accepted the plea, Hutchinson argued that the district court should apply U.S.S.G. § 5G1.3(b) to make the federal sentence run concurrently with his existing state sentence and to credit Hutchinson for the time already served on his state sentence. The district court rejected the argument:

> With respect to the 5G1.3, I have no doubt that the part[i]es agreed upon a sentence of twenty years, not a sentence of twenty years minus two, three, or whatever time it was that Mr. Hutchinson was doing with respect to the Utica offense. And I just don't think [] 5G1.3 has any application to that situation....

The district court also denied Hutchinson's requests for (1) a hearing pursuant to *United States v. Fatico,* 458 F.Supp. 388

(E.D.N.Y.1978), *aff'd,* 603 F.2d 1053 (2d Cir.1979); (2) a downward departure based on family circumstances; and (3) appointment of new counsel. The district court then imposed a twenty-year sentence.

Hutchinson now appeals his sentence.

### DISCUSSION

On appeal, Hutchinson's principal claim of error is that the district court failed to credit him for time served on his state conviction in contravention of section 5G1.3(b) of the United States Sentencing Guidelines. Section 5G1.3(b) states that if there is an undischarged term of imprisonment for an offense that has been "fully taken into account in the determination of the offense level for the instant offense, the sentence for the instant offense shall be imposed to run concurrently to the undischarged term of imprisonment." Application Note 2 to section 5G1.3 further states that, if a sentence is imposed concurrently under section 5G1.3(b), the district court "should adjust the sentence for any period of imprisonment already served as a result of the conduct taken into account in determining the guideline range for the instant offense." U.S.S.G. § 5G1.3 cmt. n. 2.

We first hold that we have appellate jurisdiction over this appeal under 18 U.S.C. § 3742(a) and that Hutchinson has not waived his right to appeal the question presented. On the merits, we hold that the district court was required to apply section 5G1.3(b) to Hutchinson's stipulated sentence, in light of the plea agreement's failure to address the question. Because the basis of the district court's refusal to impose a concurrent sentence was unclear, however, we proceed to consider whether Hutchinson would have benefitted from

gory of IV, producing a mandatory life sentence. *See* U.S.S.G. § 5A (sentencing table).

section 5G1.3(b) if the district court had applied it to the Rule 11(e)(1)(C) sentence bargain. We hold that it would have made no difference to his sentence and accordingly affirm the sentence imposed by the district court.

## I. Appellate Jurisdiction

 The government contends that we lack jurisdiction to review the district court's failure to apply U.S.S.G. § 5G1.3(b). We disagree.

Our jurisdiction to review sentences in criminal cases is governed by 18 U.S.C. § 3742. Section 3742(a) states in part that "[a] defendant may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence—(1) was imposed in violation of the law; [or] (2) was imposed as a result of an incorrect application of the sentencing guidelines." 18 U.S.C. § 3742(a). We construe Hutchinson's appeal to assert either that the district court committed legal error in entirely refusing to apply section 5G1.3(b) or that the district court misapplied it. In any event, we have jurisdiction to hear the appeal under § 3742(a)(1) or (a)(2).

The transcript is ambiguous as to whether the district court viewed section 5G1.3(b) as simply inapplicable to a Rule 11(e)(1)(C) plea agreement or whether it thought that, on the specific facts of this case, section 5G1.3(b) was inapplicable because Hutchinson's prior offense had not been "fully taken into account" within the meaning of section 5G1.3(b). As we have noted, the district court stated generally that the Guidelines were inapplicable to a Rule 11(e)(1)(C) bargain and at one point stated specifically that "I just don't think ... 5G1.3 has any application" to such a plea agreement. Elsewhere in the record, however, the district court implied that section 5G1.3 could mandate a concurrent sentence only if the state and federal offenses were the same, *i.e.*, comprised the same elements, but that Hutchinson's offenses were not: "[I]t's quite clear that what Mr. Hutchinson pleaded to was not the substantive offense of distributing cocaine in Utica, he was pleading to conspiracy to possess with intent to distribute cocaine, which is a separate and distinct offense."

If the district court erred in its belief that section 5G1.3(b) is always irrelevant to a Rule 11(e)(1)(C) plea, then its failure to apply the Guideline would be an error of law cognizable by this court under 18 U.S.C. § 3742(a)(1). Hutchinson's brief on appeal argues that the district court made such an error. That contention is analogous to the more familiar complaint that a district court failed to depart downward because it believed it lacked legal authority to do so, a claim that we have held will support our jurisdiction under § 3742(a)(1). *See United States v. Adeniyi*, 912 F.2d 615, 619 (2d Cir.1990) ("A decision not to depart downward would be 'in violation of law' under § 3742(a)(1) if it was based upon constitutionally impermissible considerations or an erroneous interpretation of law, such as a sentencing court's mistaken conclusion that it lacked the statutory authority to depart."); *United States v. Colon*, 884 F.2d 1550, 1552-53 (2d Cir.1989). If, on the other hand, the district court in fact did reach the merits of Hutchinson's section 5G1.3(b) claim, but erroneously found that the section did not mandate a concurrent sentence in this particular case, then our jurisdiction would be plain under § 3742(a)(2) because the claim would be that the district court had misapplied the Guideline. Our jurisdiction does not depend in any respect on our view of the merits of either question.

As a final preliminary matter, although Hutchinson waived his right to appeal the length of the stipulated sentence, he did

not waive a claim on appeal that the sentence should have been imposed concurrently with his state sentence. Indeed, the government concedes that Hutchinson has not waived his right to appeal this issue. *See United States v. Brown*, 232 F.3d 44, 48 (2d Cir.2000) (per curiam), *cert. denied*, —— U.S. ——, 121 S.Ct. 1245, 149 L.Ed.2d 152 (2001); *United States v. Velasquez*, 136 F.3d 921, 923 n. 1 (2d Cir. 1998) (per curiam). Although the government does not expressly concede that Hutchinson also has not waived his claim that he should be given credit for time served on his state sentence, we find that claim to be subsumed within the broader question whether his sentence should be served concurrently with his state sentence. *Cf. United States v. Dorsey*, 166 F.3d 558, 563 (3d Cir.1999) ("[T]he court must be able to award [the time-served] credit to make the sentences truly concurrent.").

Therefore, we conclude that Hutchinson's allegation of error in the district court's refusal to apply, or improper application of, U.S.S.G. § 5G1.3(b) was not waived and is sufficient to invoke our appellate jurisdiction under 18 U.S.C. § 3742(a).

## II. Applicability of Section 5G1.3

■ We face a matter of first impression in this Circuit in considering whether (1) a district court is prohibited from applying section 5G1.3(b) to a sentence stipulated in a Fed. R. Crim. P. 11(e)(1)(C) plea bargain, (2) it is obligated to apply it to such a sentence, or (3) the section is neither obligatory nor prohibited but discretionary. We now hold that a district court is obligated to apply section 5G1.3(b) to

Rule 11(e)(1)(C) plea bargains that are mute about how the sentence is to interact with an existing undischarged sentence.

As an initial matter, we are not persuaded by the government and concurrence's argument that the district court was not empowered to consider section 5G1.3(b) in the present circumstances, on the theory that application of the section would impermissibly modify the bargain. To be sure, we have held that a district court may accept or reject a Rule 11(e)(1)(C) sentence bargain, but may in no event modify it. *See United States v. Cunavelis*, 969 F.2d 1419, 1422-23 (2d Cir.1992); *United States v. Braimah*, 3 F.3d 609, 611 (2d Cir.1993); *see also United States v. Kaye*, 65 F.3d 240, 244 n. 3 (2d Cir.1995) (dictum), *vacated on other grounds*, 140 F.3d 86 (2d Cir.1998). The language of Rule 11(e)(1)(C) at the time *Cunavelis* was decided—and when Hutchinson entered his plea and was sentenced—allowed the parties to stipulate that "a specific sentence is the appropriate disposition of the case." Fed. R. Crim. P. 11(e)(1)(C) (1999). Rule 11(e)(3) stated, then as now, that "[i]f the court accepts the plea agreement, the court shall inform the defendant that it will embody in the judgment and sentence the disposition provided for in the plea agreement." Fed. R. Crim. P. 11(e)(3) (1999). Relying in large part on the latter language, *Cunavelis* rejected the argument that a defendant may enter a Rule 11(e)(1)(C) sentence bargain and then seek a downward departure from the stipulated sentence. The *Cunavelis* court concluded that such plea agreements are "binding on the district court" and that the court "may accept or reject [the] plea, but it may not modify it."[3] 969 F.2d at 1422.

---

**3.** The current version of Rule 11(e)(1)(C) states that the government and defendant may "agree that a specific sentence or sentencing range is the appropriate disposition of the

case. . . . Such a plea agreement is binding on the court once it is accepted by the court." Given the last sentence, we see no reason that

■ Nevertheless, we find *Cunavelis* to be inapplicable to a defendant's request that a district court apply section 5G1.3(b) to a plea agreement that says nothing about whether the stipulated sentence should run consecutively to or concurrently with an existing undischarged sentence. In applying section 5G1.3(b) under those circumstances, a district court does not "modify" the stipulated sentence, but rather decides how the stipulated sentence is to be implemented vis-à-vis an existing sentence. Because the bargain is silent about whether the parties intended the sentences to run concurrently or consecutively, a district court's application of section 5G1.3(b) would not "modify" the stipulated sentence at all.[4] Such a situation is different from that in which the plea agreement expressly states whether the sentence is to run concurrent with or consecutive to an existing sentence. The question in that case must be answered without reference to the Guidelines. The bargained-for sentence controls, and a contrary conclusion based on section 5G1.3(b) would contradict the plea bargain and violate our holding in *Cunavelis*.

■ In the absence of a concurrent/consecutive sentence provision in the plea agreement, the Guidelines must continue to control the district court's sentencing decision.[5] With respect to the determination whether the sentences are to be served concurrently or consecutively, a district court is in substantially the same position in sentencing as it would be without any agreement. In such case, the court does not return to a pre-Guidelines world, but rather should expect to have its discretion limited as it would be absent an agreement. Section 5G1.3(b) accordingly structures the district court's discretion in sentencing where the plea agreement provides no guidance about how the sentences should be implemented.

Moreover, a rule requiring application of the Guideline in those circumstances allows the defendant and the government to know *ex ante* how coexisting sentences will be implemented if they fail to specify a particular treatment in the plea agreement. Conversely, in the event they fail to consider the question at all—as apparently was the case here—they cannot be surprised by the district court's reliance on the longstanding rules adopted by the Sentencing Commission.

### III. Application of Section 5G1.3

■ Because the district court here appeared uncertain about its authority to apply section 5G1.3, we look further to see whether the Guideline would have helped Hutchinson had the district court thought itself authorized to apply it. We conclude that it would not have done so, because, in setting Hutchinson's offense level for the present offense, the district court in fact did not take Hutchinson's prior offense into consideration.

■ Hutchinson argues in effect that his prior state conviction was considered

---

*Cunavelis*'s holding should not continue to apply under the current version of the Rule.

4. In essence, the concurrence would adopt a default rule holding that plea bargains that are silent on whether the sentences are to be served concurrently or consecutively must be read to require consecutive sentences. While in some cases this may comport with the intent of the parties, it will not always do so, and by definition will not do so where, as here, the parties concede to having had no intent whatsoever on the issue. That the parties did not decide the question, however, does not absolve the district court of the responsibility for doing so.

5. We are not faced, of course, with the intermediate case, in which the agreement contains a reference to concurrent or consecutive sentences but that reference is ambiguous.

as "relevant conduct" in setting his offense level. *See* U.S.S.G. § 1B1.3 (defining "relevant conduct"). Treatment of prior offense conduct as relevant conduct can justify imposition of a concurrent sentence under section 5G1.3(b). *See United States v. Garcia–Hernandez,* 237 F.3d 105, 109 (2d Cir.2000); *Brown,* 232 F.3d at 48-49; *United States v. Livorsi,* 180 F.3d 76, 82-83 (2d Cir.1999).

Those cases belie the district court's suggestion that section 5G1.3(b) applies only where the past and present offenses are identical, possessing the same elements. Indeed, in *Brown,* a case decided after the district court rendered judgment, we assumed without discussion that section 5G1.3(b) can be applied to distinct offenses, based on facts very much like the present: a state conviction for attempted criminal sale of a controlled substance and a federal conviction for conspiracy to distribute and possess with intent to distribute heroin. *See Brown,* 232 F.3d at 45-46, 48-49. Moreover, the use of the word "conduct" in Application Note 2 also indicates that the focus should not be on the legal definitions of the offenses, but rather on whether the conduct underlying the first offense was also the basis for prosecution of the second. *See* U.S.S.G. § 5G1.3(b) cmt. n. 2 (referring to "conduct taken into account"). Courts in other circuits have also focused on offense conduct, although without explicit discussion of the question. *See, e.g., United States v. Bell,* 46 F.3d 442, 445-46 (5th Cir.1995); *United States v. Bell,* 28 F.3d 615, 618-19 (7th Cir.1994).

Although prior offense conduct might technically qualify as "relevant conduct" in a federal prosecution, a defendant cannot enjoy the benefits of section 5G1.3(b) unless the district court *in fact* incorporated his prior offense as relevant conduct in the instant prosecution. Section 5G1.3(b)'s reference to "offense(s) that have been fully taken into account in the determination of the offense level for the instant offense" means that the prior offense must have been actually accounted for by the district court in calculating the defendant's offense level. The Guideline's language is not hypothetical or abstract; it does not refer to offenses that, in theory, could be fully taken into account. It suggests that the other offense must have been considered in fact in the defendant's sentencing.[6] *But cf. United States v. Fuentes,* 107 F.3d 1515, 1522 (11th Cir. 1997) (holding that "the 'fully taken into account' requirement of section 5G1.3(b) is satisfied when the undischarged term resulted from an offense that section 1B1.3 requires to be included as relevant conduct, regardless of whether the sentencing court actually took that conduct into account"). The approach we describe is also consistent with our holding in *Garcia–Hernandez* that the purpose of the Guideline is to prevent "double counting" of the same conduct in two sentences. 237 F.3d at 109. Where the prior offense has not been "counted" in setting the offense level for the present offense, there has been no

---

**6.** That does not mean, however, that the prior offense must have been a but-for cause of an increase in the defendant's offense level. The example provided in Application Note 2 to section 5G1.3 suggests as much. There the prior offense is in fact considered as relevant conduct: the quantity of drugs attributable to the defendant is increased to account for the quantity involved in a prior state prosecution. Nevertheless, with or without consideration of the prior drug offense, the defendant's offense level would be the same (14), because the drug quantity table applies that level to a range of drug quantities, which includes the quantities with and without inclusion of the prior offense quantity. *See* U.S.S.G. § 5G1.3 cmt. n. 2; U.S.S.G. § 2D1.1(c)(13).

"double counting," and the purpose of the Guideline is not implicated.

If, in sentencing Hutchinson, the district court actually considered as "relevant conduct" the conduct underlying Hutchinson's state conviction, then it was "fully taken into account" for purposes of section 5G1.3(b). Based on our review of the record from Hutchinson's sentencing, however, we do not believe that the district court actually considered the state offense conduct in imposing Hutchinson's final federal sentence. Consequently, section 5G1.3(b) does not mandate a concurrent sentence or credit for time served.

 To be sure, in describing Hutchinson's state conviction, the presentence report ("PSR") states that

> [i]n relation to the instant offense, the defendant was arrested by local police in Utica, New York, on March 14, 1995. He possessed 30 grams of crack cocaine, an unspecified amount of marijuana, and a revolver and ammunition at the time of the arrest. . . . *The conduct with respect to this conviction was fully taken into account in determining the offense level for the instant offense.*

(Emphasis added). Although this language initially bolsters Hutchinson's position, it is by no means dispositive. In fact, the PSR calculation of Hutchinson's offense level was not the basis for his eventual twenty-year sentence; indeed, the PSR concluded that the Guidelines dictated a mandatory life sentence. Unless the district court actually adopts the PSR's conclusions, the considerations underlying the PSR's calculations do not *ipso facto* become those of the district court, and one cannot conclude

that something "fully taken into account" in the PSR was also necessarily "fully taken into account" by the district court in passing sentence.[7] Where a Rule 11(e)(1)(C) sentence bargain is involved, we will look to whether the district court actually took the prior offense conduct into account in deciding to accept the plea, or substantially adopted a PSR that did so.

In the instant case, although the U.S. Probation Office apparently took the state conviction into account in estimating Hutchinson's offense level, we do not believe that the state offense played any meaningful role in the sentence actually imposed by the district court. The district court's statements at the sentencing hearing indicate that the district court was not focused on the drug quantity attributable to Hutchinson or the conduct underlying the attempted possession charge in its decision to accept the plea bargain. In reviewing the sufficiency of the evidence against Hutchinson, the district court stated that it was "skipping" the evidence "dealing with the Utica arrest and the search, and the search warrant and the affidavit of the police." Instead, the court relied on a variety of Hutchinson's co-conspirators' statements describing Hutchinson's drug dealing operation in Utica and connecting him to the CIC/Cavemen operation in Brooklyn. We therefore find that the state offense conduct was not "fully taken into account" by the district court in sentencing Hutchinson to twenty years' incarceration.

## CONCLUSION

We conclude that the district court was obligated to apply U.S.S.G. § 5G1.3(b), but

---

**7.** Admittedly, in most cases, a district court will rely very heavily on the PSR in imposing sentence. *See* Steven A. Fennell & William N. Hall, *Due Process at Sentencing: An Empirical and Legal Analysis of the Disclosure of Presentence Reports in Federal Courts*, 93 Harv. L. Rev. 1615, 1617 (1980). In such cases, having a PSR that relies on prior offense conduct will also mean that the sentence imposed also actually takes into account that prior offense conduct.

that, because the state offense was not "fully taken into account" in Hutchinson's federal sentence, the Guideline does not mandate that his sentence run concurrently with his state sentence. We have considered Hutchinson's other claims of error and find them to lack merit. The judgment of the district court is therefore affirmed.

HADEN, Chief District Judge, concurring:

Although the majority has reached the correct conclusion in affirming Judge Glasser, I write separately because I believe the judgment should be affirmed for different reasons.

The majority holds that a district court is under a mandatory obligation to apply Guideline Section 5G1.3(b) to *Rule* 11(e)(1)(C) sentence bargains that are mute about the proposed federal sentence's interaction with an undischarged state sentence. I believe, however, that approach might one day encourage credit where credit is not due. The majority treats the Section 5G1.3(b) credit as a "sentence implementation" issue. I am left, however, with the apprehension that today's decision will generate impermissible modifications of mutually bargained for agreements allowable under *Rule* 11(e)(1)(C).[8]

Hutchinson knowingly and voluntarily agreed to a "certain and significant, but much lighter, twenty-year prison term." *Ante* at 163. He now seeks, however, to have that custodial term reduced by an 11-month credit for time previously served on his state sentence. If permitted to do so, Hutchinson would not serve the full 20 year sentence imposed by Judge Glasser, a term both he and the Government agreed he should serve when they struck their bargain.

I would affirm based on the simple proposition that we can and should hold Hutchinson to his word by applying *Rule* 11(e)(1)(C) as written and by recognizing Section 5G1.3(b) does not apply to this type of sentence bargain.

## I. Rule 11(e)(1)(C)

The applicable version of *Rule* 11(e)(1)(C) allows the Government and a defendant in a plea agreement to "agree that a specific sentence is the appropriate disposition of the case." Fed.R.Crim.P. 11(e)(1)(C). My reading of this Circuit's precedent discloses the Guidelines are inapplicable to a *Rule* 11(e)(1)(C) plea agreement that proposes a specific, non-Guidelines sentence.

In *United States v. Cunavelis*, 969 F.2d 1419 (2d Cir.1992), the parties entered a *Rule* 11(e)(1)(C) plea in which the Government agreed to a four (4) level reduction from whatever Guidelines offense level the district judge found applicable. On appeal, Cunavelis argued the district court erred in holding it lacked discretion to reduce her Guidelines offense level by more than the agreed 4 levels. In response, this Court held:

> Parenthetically, I note the complex issues of this appeal could have been avoided entirely had the parties reduced their bargain to writing before presenting it to Judge Glasser. An additional hour to craft and execute a plea agreement would have been time well spent.

---

8. I am also concerned the holding might open unexpected doors for defendants directly, or collaterally, to attack global, oral plea agreements with a sentence bargain based on the failure to address all possible sentencing issues. Only time will tell how creative defense attorneys and jailhouse lawyers might seek to extend the majority's holding in unanticipated and unintended directions.

The Guidelines emphatically state that "[t]he rules set forth in Fed.R.Crim.P. 11(e) govern the acceptance or rejection of [plea] agreements." U.S.S.G. Ch. 1, Pt. A., intro. comment 4(c) (Nov.1991). *Accordingly, Rule 11—not Guidelines section 5K1.1—controls.*

*Id.* at 1422 (emphasis added).

At least one subsequent case has read *Cunavelis* quite broadly. In *United States v. Kaye*, 65 F.3d 240 (2d Cir.1995), *vacated on other grounds*, 140 F.3d 86 (2d Cir. 1998), Judge Winter observed in the text "The Guidelines are mandatory[,]" *id.* at 243, but qualified that statement:

> Different considerations may apply where a plea agreement designates a specific sentence. Fed.R.Crim.P. 11(e)(1)(C) provides that the government may "agree that a specific sentence is the appropriate disposition of the case." We have held that a court may "accept or reject ... [but] may not modify" an agreement calling for a specific sentence, *even if the sentence does not comport with the Guidelines.*

*Id.* at 244 n. 3 (emphasis added)(citing *Cunavelis*).

In addition to the *Kaye I* interpretation, commentators have read *Cunavelis* in similar fashion. At least one places this Circuit on the side of a split of authority permitting *Rule* 11(e)(1)(C) sentence bargains to fall outside the Guidelines. John M. Dick, *Allowing Sentence Bargains to Fall Outside of the Guidelines Without Valid Departures: It is Time for the Commission to Act*, 48 Hastings L.J. 1017, 1046–47 (1997); *see also* 1A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 175.1 (3rd ed. 1999) ("The sentence agreed to may be more or less severe than would have been provided by the Sentencing Guidelines."). Neither *Cunavelis* nor *Kaye I* are aberrations. Other courts have followed suit. *See, e.g.,*

*United States v. Barnes,* 83 F.3d 934, 941 (7th Cir.1996); *United States v. Schaechter,* 891 F.Supp. 247, 252 (D.Md.1995) (citing *Cunavelis*).

Furthermore, as the majority opinion correctly observes, *Rule* 11(e)(2) does not permit a judge to vary the terms of a sentence-bargain plea. The Rule states "If the agreement is of the type specified in subdivision (e)(1) ... (C), the court may *accept or reject* the agreement...." *Id.; see also, e.g., United States v. Workman,* 110 F.3d 915, 917 (2nd Cir.1997); *Cunavelis,* 969 F.2d at 1422. These cases acknowledge that a sentence strictly observing the parties' *Rule* 11(e)(1)(C) bargain is binding unless the sentencing judge wholly rejects the sentence bargain and its accompanying plea.

Also, *Rule* 11(e)(3) provides in consistent fashion that if a plea is accepted the court must "inform the defendant that it will embody in the judgment *and sentence* the disposition provided for in the plea agreement." *Id.* No mention is made of "sentence implementation" issues because the drafters expected the parties to address those issues in their agreement. Where not addressed, I have no difficulty with sentencing in accordance with the explicit terms of the agreement. *Cf. United States v. Swigert,* 18 F.3d 443, 445–46 (7th Cir.1994)("Indeed, it appears that the parties never discussed the possibility of a split sentence when they executed the plea agreement. The government apparently believed that the agreement did not contemplate such a sentence, and we believe that if Swigert had a different understanding, he was obligated to alert the government so that the parties could then expressly address in their Rule 11(e)(1)(C) agreement whether a split sentence would be permitted."); *United States v. Veri,* 108 F.3d 1311, 1315 (10th Cir.1997) ("[A] defendant's assumption that relief other than

that specified in the agreement might be available is unreasonable[.]").[9]

When Judge Glasser sentenced Randy Hutchinson, he did so in accordance with what *both* parties requested of him in the agreement.[10] As the foregoing discussion makes clear, we are forbidden from even considering the supplementation or modification of that agreement for the unexpected benefit of one and the detriment of another.

## II. Section 5G1.3(b)

I also write separately to express another objection to the mandatory application of U.S.S.G. § 5G1.3(b) under these circumstances. The text of the Guideline, its commentary, and controlling case law appear to disqualify it from consideration. The Guideline provides:

> (b) If subsection (a) does not apply, and the undischarged term of imprisonment resulted from offense(s) that have been fully taken into account in the *determination of the offense level* for the instant offense, the sentence for the instant offense shall be imposed to run concurrently to the undischarged term of imprisonment.

*Id.* (emphasis added). The Commentary similarly suggests § 5G1.3(b) applies where there has been a "period of imprisonment already served as a result of the conduct taken into account *in determining*

the guideline range for the instant offense[.]" *Id.* (emphasis added).

Consistent with the text of the Guideline and commentary, Judge Calabresi stated just months ago:

> We therefore read the modifier "fully" to restrict § 5G1.3(b) to a particular sub-set of all those circumstances in which a separate offense is, in some way, *considered in determining the Guidelines offense level.*

*United States v. Garcia–Hernandez,* 237 F.3d 105, 109 (2nd Cir.2000)(emphasis added); *see also United States v. Fermin,* 252 F.3d 102, 108 (2nd Cir.2001)("Because the robbery conviction has not been 'fully taken into account' *in determining the offense level for the instant offense, subsection (b) is not relevant.*")(emphasis added); *see also, e.g., Witte v. United States,* 515 U.S. 389, 405, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995)("If a defendant is serving an undischarged term of imprisonment 'result[ing] from offense(s) that have been fully taken into account [as relevant conduct] *in the determination of the offense level for the instant offense,'* § 5G1.3(b) provides that 'the sentence for the instant offense shall be imposed to run concurrently to the undischarged term of imprisonment.' ") (alterations in original, emphasis added); *Garcia–Hernandez,* 237 F.3d at 108 ("In order to trigger the application of § 5G1.3(b), an offense other than the one

**9.** The majority opinion suggests I have adopted a default rule. To the contrary, I would simply require, consistent with Rule 11, that we enforce the parties' bargain as made.

**10.** Despite Hutchinson's claims to the contrary at argument, he was advised adequately he would not receive separate credit for the time already served in state custody. As conceded by the majority, Judge Glasser explicitly advised Hutchinson at the plea hearing that the Guidelines, the very source of any potential credit, did not apply:

> THE COURT: I would normally explain what the guidelines are all about and what the estimated guidelines in this case might be. *That is superfluous because each of you has entered in an agreement with the government* ... [in which the] *sentence* ... *is agreed upon.*

(Emphasis added). This admonition, in addition to the advice Hutchinson was subject to a sum-certain sentence of twenty years, represented a careful, plain and pointed declaration sufficient to dispatch Hutchinson's later-asserted lack of notice he would not receive credit under the Guidelines for time served on the state conviction.

for which a defendant is being sentenced ... must ... be taken into account *'in the determination of the offense level* for the instant offense [of conviction][.]' ") (emphasis added). Defendant conceded as much before Judge Glasser: "5G1.3 speaks exclusively in terms of as its trigger point, if you will, the calculation of the offense level."

Consequently, Section 5G1.3(b) should not apply here for the simple reason that Judge Glasser was not required to, and in fact did not, "determin[e] ... [an] *offense level* for the instant offense."[11] U.S.S.G. § 5G1.3(b) (emphasis added). Despite what may have occurred at times intervening, both at the entry of the plea and in his comments in imposing sentence, Judge Glasser was crystal clear in his belief the Guidelines were irrelevant. During the plea colloquy, as noted *supra:*

> THE COURT: I would normally explain what the guidelines are all about and what the estimated guidelines in this case might be. *That is superfluous because each of you has entered in an agreement with the government ... [in which the] sentence ... is agreed upon.*
>
> .　　.　　.　　. ．　　.
>
> Mr. Hutchinson, did you understand that there is an agreed sentence—
> DEFENDANT HUTCHINSON: —Yes—
> THE COURT: Of [twenty] ... years?
> DEFENDANT HUTCHINSON: Yes, with the government.

(Emphasis added). Near the end of the sentencing hearing months later, Judge Glasser reiterated consistently:

> With respect to 5G1.3, I have no doubt that the part[i]es agreed upon a sentence of twenty years, not a sentence of twenty years minus two, three, or whatever time it was that Mr. Hutchinson was doing with respect to the Utica offense. And I just don't think a 5G1.3 has any application to that situation....[12]

Also noteworthy is Judge Glasser's failure to include any Statement of Reasons with his Judgment. That Statement is

**11.** The majority suggests that "in setting Hutchinson's offense level for the present offense, the district court in fact did not take Hutchinson's prior offense into consideration." *Ante* at 166. One searches the record in vain, however, for Judge Glasser's explicit offense level finding. In fact, the record reveals a number of offense levels were discussed at different times. For example, the defense referenced offense level 43, the government referenced offense levels 47, 36, and 38 and the presentence report noted a base offense level of 43. No offense level was determined because, as Judge Glasser stated, "the sentence was an agreed upon sentence pursuant to 11(e)(1)(c). And the only issue which is left is for me to determine whether I'm accepting that agreement." As Hutchinson himself aptly recognizes "[T]he sentencing court made *no determination at all* as to the guideline sentence that would apply in the absence of a twenty-year stipulated sentence." (Emphasis added). The only basis even for speculation on that point is the calculation contained in the presentence report. The majority, however, concludes "the PSR calculation of Hutchinson's offense level was not the basis for his eventual twenty-year sentence[.]" *Id.* at 168.

**12.** During the parties' discussion of disputed matters in the presentence report affecting relevant conduct, Judge Glasser made this observation as well:

> Now, there is no question about the sentence to be imposed, assuming that the Court accepts the 11(e)(1)(C) plea bargain which was entered into between Mr. Hutchinson and the government. These facts have no bearing on the sentence, because the sentence was an agreed upon sentence at the time of the plea. And what all that I'm hearing amounts to questions, the validity of the plea, not the sentence to be imposed. *The facts have no bearing on the sentence to be imposed. That was an agreed*

included in the standard form "Judgment in a Criminal Case" promulgated by the Administrative Office of the United States Courts, and includes a court's findings as to the applicable Offense Level, Criminal History Category, and applicable Guideline ranges. No such findings appear in the Judgment in this case, because such findings were neither made nor required.

The inquiry is not, as the majority casts it, whether "the state offense was . . . 'fully taken into account' *in Hutchinson's federal sentence*[.]" *Ante* at 169 (emphasis added). Rather, as explicitly commanded by section 5G1.3(b) and precedent, it is whether "the undischarged term of imprisonment resulted from offense(s) that have been fully taken into account *in the determination of the offense level* for the instant offense." U.S.S.G. § 5G1.3(b) (emphasis added). Because no offense level was determined in this case, I fail to see why section 5G1.3(b) is relevant, much less mandatory.

Based on the foregoing, I would affirm Judge Glasser's enforcement of the parties' sentence bargain and his conclusion that Section 5G1.3(b) was inapplicable to modify it.

---

*upon sentence in accordance with 11(e)(1)(C).*

. . . . .

And all of the questions which are being raised now with respect to whether Sonia Kelly or Arroyo or Buzzi or Muriel did or did not, have no bearing on the sentence to be imposed, because the sentence was an agreed upon sentence pursuant to 11(e)(1)(C). And the only issue which is left is for me to determine whether I'm accepting that agreement.

(Emphasis added).

In discussing whether the underlying conduct for the state sentence was "fully taken into account[,]" the majority suggests it was

not because Judge Glasser stated at sentencing that he was " 'skipping' " the evidence. *Ante* at 168. Judge Glasser, however, was not skipping over the evidence because he deemed it unimportant. Rather, he simply chose not to rehash it because it was discussed extensively just moments before. Indeed, as defense counsel noted:

[The 30 grams of crack in the state case] is the *only* evidence that physically and specifically indicates drug activity on his part, so *in some way it would be ironic for the Court to take the strongest piece of drug dealing in the government's case and say he's not being punished for it in this case.*

(Emphasis added).