PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.                                          No. 02-4956

ANTHONY K. ROUSE,
            *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Virginia, at Charlottesville.
James H. Michael, Jr., Senior District Judge.
(CR-01-15)

Argued: January 21, 2004

Decided: March 26, 2004

Before WILKINS, Chief Judge, and NIEMEYER
and TRAXLER, Circuit Judges.

---

Affirmed by published opinion. Chief Judge Wilkins wrote the opinion in which Judge Niemeyer and Judge Traxler joined.

---

## COUNSEL

**ARGUED:** J. Lloyd Snook, III, SNOOK & HAUGHEY, P.C., Charlottesville, Virginia, for Appellant. Nancy Spodick Healey, Assistant United States Attorney, Charlottesville, Virginia, for Appellee. **ON BRIEF:** John L. Brownlee, United States Attorney, Charlottesville, Virginia, for Appellee.

## OPINION

WILKINS, Chief Judge:

Anthony K. Rouse appeals the sentence imposed on him by the district court following his plea of guilty to conspiracy to distribute cocaine base, *see* 21 U.S.C.A. § 846 (West 1999). Rouse argues that the district court was required by *United States Sentencing Guidelines Manual* § 5G1.3(b) (2000) to impose his federal sentence to be served concurrently with a state sentence Rouse was serving for a previous drug distribution conviction. We affirm.

I.

Rouse was involved in a drug distribution conspiracy in Orange County, Virginia, between 1999 and late 2000. The primary object of the conspiracy was the distribution of cocaine base. On April 6, 2000, Rouse sold one third of a gram of cocaine base to an undercover officer ("the April 6 drug sale"). In April 2001, Rouse pleaded guilty in state court to distribution of cocaine and was sentenced to 13 years imprisonment with six and one-half years suspended.

In June 2001, Rouse pleaded guilty in federal court to one count of conspiracy to distribute 50 or more grams of cocaine base. Regarding the April 6 drug sale, the plea agreement provided:

> The United States stipulates and agrees that my recent conviction in April 2001 for drug distribution in Orange County, Virginia, was for a distribution that was a part of the conspiracy to which I am now pleading guilty in accordance with this plea agreement.

J.A. 14. The plea agreement also contained a stipulation by Rouse that "the total drug weight for which I should be held accountable . . . is at least 50 grams but less than 150 grams of cocaine base, unless the presentence investigation shows a lesser amount." *Id.* at 13-14.

Consistent with the plea agreement, the presentencing report (PSR) predicated Rouse's base offense level on a drug quantity of between

50 and 150 grams of cocaine base. *See* U.S.S.G. § 2D1.1(c)(4). However, because Rouse is a career offender, his offense level was adjusted to level 37 based not on drug quantity, but rather on the statutory maximum penalty of life imprisonment for the offense of conviction.* *See id.* § 4B1.1(A). After three levels were subtracted for acceptance of responsibility, Rouse's adjusted offense level was 34. This offense level, combined with the mandatory Criminal History Category VI, *see id.* § 4B1.1, resulted in a guideline range of 262 to 327 months imprisonment. Rouse raised no objections to the PSR.

At sentencing, the district court granted the Government's motion for a downward departure based on Rouse's substantial assistance, *see id.* § 5K1.1, and imposed the statutory minimum sentence of ten years. Following the imposition of this sentence, Rouse's counsel asked whether Rouse would receive any credit on his federal sentence for the state sentence Rouse was serving for the April 6 drug sale. The district court responded, "The Court has the authority to direct that the sentence run consecutively or concurrently . . . . [I]n this case, it does seem appropriate to the Court that he serve these sentences consecutively . . . ." J.A. 38. Counsel did not object.

Rouse now appeals, arguing only that the district court was required to order that his federal sentence be served concurrently with his state sentence.

## II.

Section 5G1.3 of the Guidelines provides instructions concerning the imposition of sentence when the defendant is subject to an undischarged term of imprisonment. At the time of Rouse's sentencing, § 5G1.3 provided in pertinent part:

---

*Rouse does not dispute that he was properly classified as a career offender, nor does he contend that his conviction for the April 6 drug sale was one of the convictions on which his career offender status was predicated. *Compare* U.S.S.G. § 4B1.1 (providing that "[a] defendant is a career offender if," *inter alia*, "the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense") *with* J.A. 60 (noting that the conviction for the April 6 drug sale was not awarded any criminal history points because of its relation to the instant offense).

(b)     If . . . the undischarged term of imprisonment resulted from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense, the sentence for the instant offense shall be imposed to run concurrently to the undischarged term of imprisonment.

(c)     (Policy Statement) In any other case, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense.

U.S.S.G. § 5G1.3(b), (c). Rouse contends that the April 6 drug sale was "fully taken into account" in his sentencing for the instant offense and thus that the district court was required by § 5G1.3(b) to impose a concurrent sentence.

The Government contends, and we agree, that Rouse did not adequately raise this issue before the district court. While Rouse's counsel did inquire of the court whether the federal sentence would be served concurrently or consecutively to the state sentence, he neither cited § 5G1.3(b) nor argued that the court was required to impose a concurrent sentence. Therefore, our review is for plain error. *See* Fed. R. Crim. P. 52(b); *United States v. Olano*, 507 U.S. 725, 731-32 (1993). To establish plain error, Rouse must show that an error occurred, that the error was plain, and that the error affected his substantial rights. *See Olano*, 507 U.S. at 732. Even if Rouse makes this three-part showing, correction of the error remains within our discretion, which we "should not exercise . . . unless the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (quoting *United States v. Young*, 470 U.S. 1, 15 (1985) (alteration in original)).

## A.

Before turning to the application of the plain error standard, we pause for a housekeeping matter. Effective November 1, 2003, § 5G1.3 and the accompanying commentary were amended. As amended, § 5G1.3(b) provides as follows:

If subsection (a) does not apply, and a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction . . . and that was the basis for an increase in the offense level for the instant offense under Chapter Two (Offense Conduct) or Chapter Three (Adjustments), the sentence for the instant offense shall be imposed as follows:

(1) the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and

(2) the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.

U.S.S.G. § 5G1.3(b) (2003), *available at* http://www.ussc.gov/ 2003guid/5g1_3.htm. Clarifying amendments are relevant in our construction of previous versions of the guidelines. *See United States v. Butner*, 277 F.3d 481, 489 (4th Cir. 2002). We therefore must consider whether the amendment of § 5G1.3(b) is clarifying or substantive.

A clarifying amendment "changes nothing concerning the legal effect of the guidelines, but merely clarifies what the Commission deems the guidelines to have already meant." *United States v. Capers*, 61 F.3d 1100, 1109 (4th Cir. 1995) (internal quotation marks omitted). In contrast, "[s]ubstantive amendments typically reflect new policy choices by the Commission." *United States v. Goines*, 357 F.3d 469, 2004 WL 144119, at *4 (4th Cir. Jan. 28, 2004). Our primary guide in determining whether an amendment is clarifying or substantive is the "purpose and effect" of the amendment. *Capers*, 61 F.3d at 1110. The Commission's characterization of an amendment as clarifying or substantive is relevant but not conclusive, for otherwise the Commission would be able to enact substantive amendments under the guise of mere clarification. *See id.*

The Commission has characterized the amendment of § 5G1.3(b) and its accompanying commentary as clarifying. *See* U.S.S.G. App. C, amend. 660. Nevertheless, application of the principles outlined above makes it clear that the amendment is substantive. Prior to the amendment, a prior offense could be "fully taken into account" even if inclusion of the offense as relevant conduct did not effect a change in the defendant's offense level. *Compare* U.S.S.G. § 5G1.3, comment. (n.2) (providing an example in which the offense of conviction involved the sale of 30 grams of cocaine and "the defendant is held accountable for the sale of an additional 15 grams of cocaine, an offense for which the defendant has been convicted and sentenced in state court"), *with* U.S.S.G. § 2D1.1(c)(13) (providing a base offense level of 14 for "[a]t least 25 G but less than 50 G of Cocaine"). The amended guideline, however, requires the conduct underlying the prior conviction to have been "the basis for an increase in the offense level for the instant offense." U.S.S.G. § 5G1.3(b) (2003). The amendment thus "works a substantive change in the operation of the guideline," *Capers*, 61 F.3d at 1110, and cannot be considered clarifying.

B.

Turning to review of the issue before us, we first must decide whether there was error. The question on appeal—whether the April 6 drug sale was "fully taken into account in determining the offense level for the instant offense"—involves two subsidiary questions: (1) What rule applies in determining whether a prior offense has been fully taken into account? and (2) How does that rule apply here? These are both issues of guideline interpretation subject to de novo review. *See Elliott v. United States*, 332 F.3d 753, 761 (4th Cir.), *cert. denied*, 124 S. Ct. 487 (2003).

In interpreting a guideline, ordinary rules of statutory construction apply. *See United States v. Stokes*, 347 F.3d 103, 105 (4th Cir. 2003). These rules require us to give the guideline its plain meaning, as determined by examination of its "language, structure, and purpose." *United States v. Horton*, 321 F.3d 476, 479 (4th Cir.) (internal quotation marks omitted), *cert. denied*, 124 S. Ct. 98 (2003). We must also examine the commentary accompanying the guideline, which "is authoritative unless it violates the Constitution or a federal statute, or

is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States*, 508 U.S. 36, 38 (1993).

1.

The purpose of § 5G1.3(b) is essential to understanding its language and deriving a rule for its application. *See United States v. Kimble*, 107 F.3d 712, 714 (9th Cir. 1997). Generally speaking, § 5G1.3(b) addresses the situation in which a defendant is prosecuted in more than one jurisdiction for related conduct. *See Witte v. United States*, 515 U.S. 389, 404 (1995). As the Supreme Court has explained,

> There are often valid reasons why related crimes committed by the same defendant are not prosecuted in the same proceeding, and § 5G1.3 of the Guidelines attempts to achieve some coordination of sentences imposed in such situations with an eye toward having such punishments approximate the total penalty that would have been imposed had the sentences for the different offenses been imposed at the same time (*i.e.*, had all of the offenses been prosecuted in a single proceeding).

*Id.* at 404-05. Phrased differently, § 5G1.3(b) prevents the "double counting" that occurs when "separate, non-offense conduct could, absent operation of this sub-section, otherwise be the basis *both* (1) for sentencing defendant *as if* that conduct had been part of the offense(s) of conviction, *and* (2) for additional punishment of that same conduct in another, and separate, criminal proceeding." *United States v. Garcia-Hernandez*, 237 F.3d 105, 109 (2d Cir. 2000). Section 5G1.3 thereby "operates to mitigate the possibility that the fortuity of two separate prosecutions will grossly increase a defendant's sentence." *Witte*, 515 U.S. at 405.

In view of the purpose of § 5G1.3(b), we agree with the Second Circuit that the provision applies—*i.e.*, that a prior offense has been "fully taken into account in the determination of the offense level for the instant offense"—at least when conduct underlying a prior conviction is considered as relevant conduct. *See Garcia-Hernandez*, 237 F.3d at 109; *Webster's Encyclopedic Unabridged Dictionary of the*

*English Language* 13 (2001) (defining "take account of" as "to make allowance for; consider"). For example, when a defendant being sentenced for a federal drug offense is held accountable, under relevant conduct principles, for a sale of narcotics that was prosecuted in state court, § 5G1.3(b) applies. *See* U.S.S.G. § 5G1.3, comment. (n.2). In contrast, when conduct for which a defendant is serving an undischarged term of imprisonment is employed in calculating the defendant's offense level but is not relevant conduct to the instant offense, § 5G1.3(b) may well not apply. *See Garcia-Hernandez*, 237 F.3d at 110 (holding that enhancement for prior aggravated felony conviction did not require application of § 5G1.3(b) because the guidelines did not treat the prior offense as though it had been prosecuted in the same proceeding).

2.

Having determined the manner in which § 5G1.3(b) is to be applied, we now turn to its application in this case. There can be no question that the April 6 drug sale is relevant conduct to the instant offense of conspiracy to distribute cocaine base. *See* U.S.S.G. § 1B1.3(a) (including as relevant conduct "all acts and omissions committed . . . by the defendant . . . that occurred during the commission of the offense of conviction"). Moreover, the parties appear to agree that, as a factual matter, the quantity of cocaine base involved in the April 6 drug sale is included in the larger quantity of drugs attributed to Rouse for sentencing purposes. And, the probation officer employed this drug quantity in calculating the base offense level for Rouse's offense.

If these were the only considerations, there would be no question that the April 6 drug sale was "fully taken into account." However, because Rouse was sentenced as a career offender, his ultimate offense level was based on the statutory maximum, not on drug quantity. We think this makes no difference. The calculation of an offense level based on relevant conduct is a necessary step in applying the career offender guideline. *See* U.S.S.G. § 4B1.1 (providing for the application of an offense level based on the offense statutory maximum if that level "is greater than the offense level otherwise applicable"). Therefore, the April 6 drug sale was in fact taken into account in determining the offense level applicable to Rouse, and § 5G1.3(b)

applies. Accordingly, the district court erred in not applying § 5G1.3(b).

## C.

We next must decide whether the error was plain. To be plain, an error must be "clear" or "obvious," *Olano*, 507 U.S. at 734 (internal quotation marks omitted), at least by the time of appeal, *see Johnson v. United States*, 520 U.S. 461, 468 (1997). An error is clear or obvious "when the settled law of the Supreme Court or this circuit establishes that an error has occurred. In the absence of such authority, decisions by other circuit courts of appeals are pertinent to the question of whether an error is plain." *United States v. Neal*, 101 F.3d 993, 998 (4th Cir. 1996) (internal quotation marks & citation omitted).

The Supreme Court has not yet addressed the question raised by Rouse's appeal, and prior to our decision today, neither had any decision of this court. And, it appears that the Second Circuit might reach a conclusion different from ours if confronted with the same facts. *See United States v. Williams*, 260 F.3d 160, 166-68 (2d Cir. 2001) (refusing to apply § 5G1.3(b) when prior offense conduct was considered in determining the offense level but the district court imposed the sentenced stipulated to by the parties pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C); holding that "the prior offense must have been actually accounted for by the district court in calculating the defendant's offense level"). Therefore, the error was not plain. *Cf. United States v. Alli-Balogun*, 72 F.3d 9, 12 (2d Cir. 1995) (per curiam) (stating that "we do not see how an error can be plain error when the Supreme Court and this court have not spoken on the subject, and the authority in other circuit courts is split").

## III.

For the reasons set forth above, we affirm the sentence imposed by the district court.

*AFFIRMED*